IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRIAN WILLIAM PATTON,

     Petitioner,

v.                                    Civil Action No. **3:11CV27**

GENE M. JOHNSON,

     Respondent.

## MEMORANDUM OPINION

Brian William Patton, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition"). Patton challenges his convictions in the Circuit Court for the City of Alexandria ("Circuit Court") for possession of cocaine with intent to distribute, conspiracy to possess cocaine with intent to distribute, and transportation of one ounce or more of cocaine into Virginia with the intent to sell or distribute.

### I. Summary of the Evidence

The Court of Appeals of Virginia aptly summarized the evidence of Patton's guilt as follows:

*Packages Shipped from Colombia and Trinidad and Tobago*

February Package

On February 11, 2005, United States Customs agents intercepted a package being processed at the Federal Express hub office in Memphis, Tennessee. The package was addressed to Brian Patton, 8280 Greensboro Drive, McLean, Virginia. According to Scott Solecki, one of the customs agents who intercepted the package, the package came from Colombia, a known source country for cocaine. After a K–9 dog indicated that there were narcotics in the package, Agent Solecki opened the box and discovered that the auto parts in the package had cocaine secreted inside of them. After the package was transported to the Washington, D.C. area Office of Immigration and Customs Enforcement (ICE), a number of agents participated in an attempted controlled delivery of the package.

The location, 8280 Greensboro Drive, is a large multi-story professional building. The agents could not locate a listing for "Brian Patton" in the office building, despite attempting to find a mailing office and contacting the building management office. Following the unsuccessful controlled delivery attempt, the agents returned the package to ICE's seized property vault. During February 2005, appellant Brian Patton worked for Communique Conferencing, Inc., located at 8280 Greensboro Drive in McLean, Virginia.

March Package

On March 15, 2005, customs agents intercepted two more packages in Miami, Florida. These packages were addressed to Joseph Patrick, 5800 Quantrell Avenue, Apartment 1001, Alexandria, Virginia, and came from Trinidad and Tobago—another known source country for cocaine. Following routine screening for packages entering the United States, customs agents discovered that these packages contained a total of approximately one pound of cocaine hidden within the cardboard lining of each box.

The Miami facility sent the packages to the Washington, D.C. ICE office. Following their arrival in the D.C. area, an ICE officer delivered the packages to Sergeant Benjamin George, the sergeant in charge of the narcotics section of the Alexandria Police Department. Sergeant George contacted Inspector Tony Gooden of the United States Postal Service to make immediate arrangements for a controlled delivery of the two boxes because of his concern that the controlled delivery proceed quickly so that the addressee would not become suspicious that something had gone wrong with his expected drug shipment.

*Search Warrant*

Detective Christopher Flood, another member of the Alexandria Police Department assigned to this case, prepared an affidavit for a search warrant of 5800 Quantrell Avenue, Apartment 1001. Detective Flood's affidavit stated, in pertinent part:

> On March 16, 2005, your affiant received information from [ICE], that two boxes had been intercepted by U.S. Customs agents in Miami, Florida, that arrived from Trinidad & Tobago. [An ICE agent] advised your affiant that U.S. Customs recognizes Trinidad & Tobago as a source country for cocaine. The boxes had been x-rayed and probed and it was discovered that approximately 1/2 pound of powder cocaine was concealed in the cardboard lining of each box. The powder cocaine was field-tested positive by U.S. Customs agents in Miami. The two boxes were sent by a Randy Sookoo of 28 Montoe Street, Claxton, Trinidad & Tobago, and were addressed to a Joseph Patrick at 5800 Quantrell Avenue, apartment # 1001, Alexandria, Virginia, 22312.... 5800 Quantrell Avenue, apartment # 1001, Alexandria, Virginia is a private residence that is located in a high crime area.

2

Detective Flood obtained a search warrant based on this affidavit. The search warrant authorized a search for "[c]ocaine, any paraphernalia related to the sale or use of cocaine, any records, documents or electronic storage devices related to the sale or use of cocaine, and any monies or proceeds from the sale of cocaine." Members of the Alexandria Police Department did not do any other investigation or surveillance prior to receiving the search warrant.

*Controlled Delivery*

On March 17, Sergeant George, Inspector Gooden, and a number of Alexandria Police Department detectives made a controlled delivery of the packages. Inspector Gooden dressed as a United States Postal Service letter carrier and delivered the parcels to 5800 Quantrell Avenue, Apartment 1001, while the others observed the delivery from various locations within the building. When Inspector Gooden knocked on the apartment door, an individual Inspector Gooden later identified as Patton answered the door. Inspector Gooden identified this individual as Patton. Patton accepted delivery of both packages, signing the name of the addressee, Joseph Patrick, for both. Patton set the packages inside the apartment, and Inspector Gooden walked away.

After the delivery was complete, Detective Salas observed someone in the hallway and followed that person down the hallway towards the elevator. Detective Salas identified the person he followed as Patton. Detective Salas, who was wearing Alexandria police raid attire that identified him as a police officer, approached Patton and verbally identified himself as an officer. In reply to Detective Salas' questions, Patton stated that he had been visiting a friend in the apartment next to Apartment 1001 and that his friend was no longer there to verify his visit. Patton also denied having a key to Apartment 1001. Detective Salas asked for Patton's identification, and, as Patton was retrieving it, Sergeant George came toward them and identified Patton as the individual who had accepted delivery of the packages. At that point, Detective Salas took Patton into custody.[1]

*Execution of Search Warrant*

The police officers executed the warrant following the conclusion of the controlled delivery and Patton's arrest. After knocking on the door and announcing their presence, Sergeant George ordered a forced entry in order to preserve officer safety and to prevent the destruction of evidence. Detective Flood noticed that the packages were still sitting immediately inside the door and were still sealed. During the search, the police found cocaine in a kitchen cabinet. The police also found various documents throughout the apartment, many of which they seized, although Detective Flood testified that they did not take every document in the apartment.

---

[1] Detective Salas also searched Patton and discovered what appeared to be a burned cigarette inside a plastic bag in Patton's pants pocket. Later, it was discovered that Patton had cocaine residue in his pants pocket.

*Wire Transfer Evidence*

Among the documents found in the apartment were various wire transfer documents, indicating that Patton wired money by Western Union between March 1, 2002 and January 26, 2004.  The Commonwealth subpoenaed records from Stacey Anderson, the manager of subpoena operations for Western Union Financial Services.  As the custodian of the records, Anderson testified regarding those documents.  Patton sent wire transfers to Trinidad and Tobago on February 7, 2005; January 25, 2004; August 12, 2003; November 6, 2002; October 18, 2002; October 19, 2002; March 1, 2002; and March 2, 2002.  Over three years, the total amount Patton wired to Trinidad and Tobago was approximately $25,000.

*Patton v. Commonwealth*, No. 0704–06–4, 2007 WL 2238000, at *1–2 (Va. Ct. App. Aug. 7, 2007) (alterations in original; punctuation corrected).[2]

## II.  Summary of Claims and Arguments

Patton contends that he is entitled to relief on the following grounds:[3]

| Claim 1 | The prosecution engaged in misconduct by withholding exculpatory evidence in the form of the Western Union signature page from the February 7, 2005 wire transfer. |
|---|---|
| Claim 2 | Denial of effective assistance of counsel: |

    A.    Counsel failed to object to the admission of the signature page for the February 7, 2005 wire transfer.

    B.    Counsel failed to contact the chief executive officer at Patton's former place of employment to obtain database records authored by Patton, which showed that Patton was working when the February 7, 2005 wire transfer was sent.

    C.    Counsel failed to subpoena Western Union to obtain a copy of the signature page of February 7, 2005 wire transfer so that a handwriting expert could opine that the signature on the form did not match Patton's signature.

---

[2] The February 7, 2005 wire transfer took place three days before the first package of cocaine addressed to Patton arrived in the Washington, D.C. area on February 10.

[3] The Court's summary of Patton's claims generally tracks the language employed by Patton.  The Court, however, utilizes Respondent's numbering system for the claims because that system is more coherent than the system employed by Patton.  Additionally, because Patton's submissions are not consistently paginated, the Court employs the page numbers assigned to those documents by the Court's CM/ECF system.

D.   Counsel failed to subpoena Jerrick Dorsey.  Patton had informed counsel that "Dorsey admitted forging Patton's signature on the actual 'to send money form' on February 7th, 2005." (§ 2254 Pet. 5.)

E.   Counsel failed to inform the Circuit Court that he had obtained documentation from Patton's former place of employment, but that counsel required more time to develop the evidence and authenticate the records from Salesforce.com through a subpoena duces tecum.

F.   Counsel should have secured the services of a handwriting expert to prove that the signature on the February 7, 2005 wire transfer did not match Patton's signature.

G.   Counsel should have informed the prosecution that a cable bill "under the name of Joseph Patrick for 5800 Quantrell Avenue had been obtained and for failing to have cab[le] bill admitted into evidence as corroborating evidence." (*Id.* at 6.)

H.   Counsel failed to move prior to trial for the exclusion of the February 7, 2005 wire transfer on the ground that sufficient evidence did not exist linking the wire transfer to Patton.

I.   Counsel failed "to get a continuance because no effort was made to get the signature page from the February 7th, 2005 wire transfer from Western Union." (*Id.*)

J.   Counsel failed to ascertain from the Alexandria Police whether Jerrick Dorsey's fingerprints were found on the baggie containing two (2) grams of cocaine.

K.   (1) Counsel failed to cite pertinent law to support the argument that the two (2) grams of cocaine found in the kitchen cabinet of the apartment should have been excluded because insufficient evidence existed linking those drugs to Patton.
(2)  Counsel also failed to discover that Patton's fingerprints were not found on the plastic baggie containing the two (2) grams of cocaine.

L.   Counsel failed to move the Circuit Court to set aside the verdict of the jury as a "violation of Double Jeopardy as stated in Virginia Code 19.2-294. . . .  Transporting more than an ounce into the Commonwealth with the intent to distribute and possession of cocaine with intent to distribute came from the same act." (*Id.* at 7.)

M.   Counsel failed to properly preserve for appeal Patton's challenge to the sufficiency of the evidence.

N.   During the suppression hearing, counsel failed to argue that the search warrant failed as an anticipatory search warrant.

O.   Counsel should have moved the Circuit Court to exclude evidence of prior uncharged bad acts on the grounds: (1) of relevancy;

5

(2) that the "uncharged act more prejudicial than probative when no evidence presented that petitioner involved with uncharged act" (*Id.* at 7–8); (3) that the Circuit Court never weighed the probative versus prejudicial value of the evidence; and, (4) that the Circuit Court failed to give any limiting instructions to the jury with respect to the bad acts.

P.   Counsel failed to object to improper closing and rebuttal arguments by the prosecution.

Q.   Counsel failed "to have search invalidated when officers failed to present the search warrant to the defendant when the search warrant was being executed." (*Id.* at 8.)

Claim 3   The Circuit Court improperly admitted evidence of prior uncharged bad act.

Claim 4   The prosecution failed to prove Patton's guilt beyond a reasonable doubt.

Claim 5   "Unconstitutional detention as a result of conviction based on illegal evidence admitted at trial." (*Id.* at 16 (capitalization corrected).)

Claim 6   "Unconstitutional detention as a result of multiple convictions and sentences based on single act." (Pet'r's Mot. Amend § 2254 Pet. (Docket No. 9) 2 (capitalization corrected).)

Respondent has moved to dismiss on the grounds that Patton procedurally defaulted Claims 1, 2(A–Q), 3, 4 and 6 and that Patton's Fourth Amendment[4] challenge in Claim 5 does not provide a cognizable basis for federal habeas corpus relief. Patton has responded. For the reasons set forth below, the Motion to Dismiss will be granted.

### III. Pertinent Procedural History

As reflected below, although Patton raises numerous claims in the § 2254 Petition, he failed to properly present the vast majority of these claims to the Supreme Court of Virginia.

---

[4] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

## A.     Direct Appeal

### 1.     Court of Appeals of Virginia

On appeal to the Court of Appeals of Virginia, Patton asserted the following grounds:

> I.      [T]he court err[ed] in failing to suppress the results of the search of the defendant's apartment, based as it was on an affidavit which failed to establish probable cause[.]
> II.     [T]he court err[ed] in not suppressing documents seized from the defendant's apartment where no probable cause was set out in the affidavit supporting a belief that such documents would be found, and where the documents in issue were not specified among those listed in the warrant[.]
> III.    [T]he court err[ed] in failing to suppress, under the Virginia Constitution, evidence found as a result of a search which violated the knock and announce rule[.]
> IV.     [T]he court err[ed] in denying the defendant's objection to the admission of evidence concerning wire transfers which were remote and unconnected to the crimes charged[.]

*Patton v. Commonwealth*, No. 0704-06-04, at 1 (Va. Ct. App. Nov. 28, 2006). Additionally, Patton argued that "the evidence was not sufficient to sustain guilty verdicts for charges of transporting one ounce or more of cocaine into the Commonwealth with the intent to sell and distribute, conspiracy to distribute cocaine, and possession of cocaine with the intent to distribute. *Id.* at 2. The Court of Appeals of Virginia concluded that Virginia Supreme Court Rule 5A:18 barred consideration of Patton's challenges to the sufficiency of the evidence. *Id.* ("[Patton] did not renew his motion to strike at the conclusion of all of the evidence. Nor did he make a motion to set aside the jury's verdict.") The Court of Appeals of Virginia found that Patton was not entitled to relief with respect to the other issues raised on appeal. *Id.* at 3–4.

### 2.     Supreme Court of Virginia

On appeal to the Supreme Court of Virginia, Patton argued the Court of Appeals of

Virginia had erred (1) in holding that evidence from Patton's apartment was properly seized and

(2) in holding that wire transfers which were remote and unconnected to the charges were

properly admitted into evidence. The Supreme Court of Virginia summarily refused Patton's

petition for appeal. *Patton v. Commonwealth*, No. 072570 (Va. May 15, 2008).

### B.     State Habeas Proceedings

### 1.     Circuit Court

On May 15, 2009, Patton filed a massive petition for a writ of habeas corpus in the

Circuit Court ("State Habeas Petition").[5]  In the State Habeas Petition Patton asserted thirty-three

separately delineated claims of ineffective assistance of counsel.[6]  On July 20, 2009 and August

3, 2009, Patton moved to amend his state habeas petition. On February 3, 2010, the Circuit

Court denied the state habeas petition. *Patton v. Superintendent, Cold Spring Corr. Unit*,

No. CL 09-2425, at 31(Va. Cir. Ct. Feb. 3, 2010). The Circuit Court's order did not address

Patton's motion to amend.

---

[5] The state habeas petition, including attachments, spans over 200 pages.

[6] Patton also claimed that the prosecution violated his rights by failing to disclose evidence favorable to Patton, to wit:  the prosecution failed to provide Patton, prior to trial, with "the actual 'to send money', form, for the February 7th, 2005 wire transfer." *Patton v. Superintendent, Cold Spring Corr. Unit*, No. CL 09-2425, Circuit Court Rec. at 7 (Va. Cir. Ct. filed May 15, 2009) (spacing corrected). Additionally, Patton claimed that his convictions were obtained by the use of evidence gained pursuant to an unconstitutional search and seizure and that the evidence was not sufficient to sustain his convictions.

###### 2.     Appeal to the Supreme Court

Patton appealed the dismissal of his state habeas petition to the Supreme Court of

Virginia. In his petition for appeal, Patton listed the following Assignment of Errors, which are

restated verbatim:

1.)   Commonwealth witheld exculpatory evidence that was specifically requested in violation of Brady. The Febuary 7th, 2005 signature page.

2.)   Defense Counsel ineffective in not objecting to the admission of specifically requested witheld exculpatory evidence, the signature page for the Febuary 7th, 2005 wire transfer.

3.)   Defense Counsel ineffective for failing to interview alibi witness and developing material facts in alibi defense, that defense counsel made no effort to contact CEO of petitioner's former place of employment to obtain database records authored by petitioner, showing that petitioner was working when Febuary 7th, 2005 wire was sent.

4.)   Defense Counsel ineffective for failing to subpoena Western Union to obtain a copy of the Febuary 7th, 2005 signature page so that a hand writing expert could opinion signature was not petitioner's.

5.)   Defense Counsel ineffective for failing to subpoena Jerrick Dorsey when petitioner informed counsel that Dorsey admitted forging Patton's signature on the actual "to send money form", on February 7th, 2005.

6.)   Defense Counsel ineffective for failing to inform the court that he had obtained documentation from petitioner's former place of employment (which was needed for an alibi defense), but more time was needed to develop the evidence and to authenticate the records from Salesforce.com through a Subpoena Duces Tecum.

7.)   Defense Counsel ineffective for not securing the services of an handwriting expert to prove that signature on the Febuary 7th, 2005 wire transfer didn't match petitioner's, wasn't altered and in fact matched Jerrick Dorsey's signature.

8.)   Defense Counsel ineffective for not informing the Commonwealth that a cable bill under the name of Joseph Patrick for 5800 Quantrell avenue had been obtained and for failing to have cable bill admitted into evidence as corroborating evidence.

9.)   Defense Counsel ineffective for failing to motion the court during the pretrial hearing to exclude the Febuary 7th, 2005 wire transfer as evidence because there was insufficient evidence linking it to defendant. Counsel argued relevancy instead.

10.)  Defense Counsel ineffective for failing (according to the Trial Court and Virginia Court of Appeals) to get a continuance because no effort was made to get the signature page from the February 7th, 2005 wire transfer from Western Union.

11.) Defense Counsel ineffective for failing to ask Alexandria Police before or during trial if Jerrick Dorsey's fingerprints were found on the plastic baggie containing the two (2) grams of cocaine.

12.) Defense Counsel ineffective for not using case law to support argument that the two (2) grams of cocaine found in the kitchen cabinet of the brother's apartment should have been excluded on the grounds that there was insufficient evidence linking it to the petitioner. Also ineffective for not discovering before trial that petitioner's fingerprints was not found on plastic baggie containing the two (2) grams of cocaine.

13.) Defense Counsel ineffective for failing to motion Trial Court to set aside the verdict of jury in violation of Double Jeopardy as stated in Virginia Code 19.2-294. Multiple Convictions and Sentences rising from the same act. Transporting more than an once into the Commonwealth with intent to distribute and possession of cocaine with intent to distribute came from the same act.

14) Defense Counsel ineffective for failing to properly (according to the Virginia Court of Appeals) strike the evidence as being insufficient at the conclusion of the Commonwealth's case in chief, failed to renew the motion after the defense put on evidence in its defense, which is a requirement. Failed to preserve for appeal.

15) Defense Counsel ineffective for not arguing during suppression hearing that search warrant failed as an anticipatory search warrant. The United States and Virginia Constitution clearly states that a package containing contraband, which is not located on the premises to be searched prior to issuing a search warrant is an anticipatory search warrant and no probable cause exist prior to the package being delivered. There are hundreds of case laws on anticipatory search warrants, yet Defense Counsel never presented even one example. The Trial Court and the Court of Appeals never addressed the fact that the search warrant was anticipatory.

16) Defense Counsel ineffective for failing to move trial Court to exclude evidence of prior uncharged bad act on the grounds of relevancy, uncharged act more prejudicial than probative when no evidence presented that petitioner involved with uncharged act and Trial Court never weighed probative verses prejudicial value and Trial Court did not give any limiting instructions to the jury.

17) Defense Counsel ineffective for failing to object to improper argument by the Commonwealth in its closing and rebuttal arguments.

18) Defense Counsel ineffective for failing to have search invalidated when officers failed to present the search warrant to the defendant when the search warrant was being executed.

19) The Habeas Court never responded to petitioner's motion to amend his petition for a writ of habeas corpus which was filed in the Alexandria Circuit Court before respondent motioned to dismiss petition. Petitioner wanted to correct language in his claim and to add ineffective assist of Appellant Attorney.

20)  The Habeas Court didn't allow petitioner to subpoena the Febuary 7, 2005 Western Union signature page so that a handwriting expert could compare the petitioner's signature to prove signature was not petitioner's, also to prove that signature wasn't altered by petitioner.

21)  The Habeas Court never acknowledged petitioner's motion for discovery and to expand the record to allow petitioner to subpoena Curtis O'Keeffe to testify that Defense Counsel never contacted him about an alibi and that the Defense Counsel unethically tried to persuade Mr. O'Keeffe not to testify on behalf of petitioner.

Petition for Appeal 3–6, *Patton v. Superintendent, Cold Springs Corr. Unit*, No. 100917 (Va.

filed May 6, 2010) (spacing corrected).  The Supreme Court of Virginia refused Patton's

petition for appeal.  That court found "that assignments of error nos. 1 through 18 are

insufficient to comply with the requirements of Rule 5:17(c)."  *Patton v. Superintendent, Cold

Springs Corr. Unit*, No. 100917, at 1 (Va. Dec. 20, 2010).[7]  The Supreme Court of Virginia

---

[7] Virginia Supreme Court Rule 5:17(c), provided, in pertinent part:

**(c) What the Petition Must Contain.** A petition for appeal must contain the following:

(1) *Assignments of Error.* Under a heading entitled "Assignments of Error," the petition shall list, clearly and concisely and without extraneous argument, the specific errors in the rulings below upon which the party intends to rely.  An exact reference to the page(s) of the transcript, written statement of facts, or record where the alleged error has been preserved in the trial court or other tribunal from which the appeal is taken shall be included with each assignment of error.

(i) Effect of Failure to Assign Error or Use Separate Heading. Only assignments of error assigned in the petition for appeal will be noticed by this Court. If the petition for appeal does not contain assignments of error, or if the assignments of error are not set forth under a separate heading as provided in subparagraph (c)(1) of this Rule, the petition shall be dismissed.

. . . .

(iii) Insufficient Assignments of Error. *An assignment of error that does not address the findings or rulings in the trial court or other tribunal from which an appeal is taken, or which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient.* If the assignments of error are insufficient, the petition for appeal shall be dismissed.

Va. Sup. Ct. R. 5:17(c) (West 2010) (final emphasis added).

further found that there was no reversible error with respect to assignment of errors 19 through 21. *Id.*

## IV. Exhaustion and Procedural Default

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of the exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (*quoting Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles'" must be presented

12

to the state court.'" *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (*quoting Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1).[8] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

As explained below, Patton's claims are procedurally defaulted because the Virginia courts expressly based their dismissal of his claims on an adequate and independent procedural

---

[8] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (*citing Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

rule or because the claims have never been fairly presented to the Supreme Court of Virginia and would now be barred by that court.

### A.    Procedurally Defaulted Claims

To exhaust Claims 1, 2(A)–(Q), 3, 4, and 6, Patton had to properly present these claims to the Supreme Court of Virginia.[9]  Because Patton filed his State Habeas Petition in the Circuit Court and that court rejected his claims, Virginia's "chosen procedural scheme" required Patton to appeal the dismissal of the claims in his State Habeas Petition through an appropriate assignment of error. *Mallory*, 27 F.3d at 995; *see* Va. Sup. Ct. R. 5:17(c); *see Yeatts v. Angelone*, 166 F.3d 255, 263–65 (4th Cir. 1999) (approving the Supreme Court of Virginia's conclusion that state habeas claims were procedurally defaulted for failure to comply with Va. Sup. Ct. R. 5:17(c)); *Whitley v. Bair*, 802 F.2d 1487, 1500 (4th Cir. 1986) (concluding "failure to appeal claims disposed of by a state habeas trial court constitutes a procedural bar to further federal review of such claims" (*citing Mason v. Procunier*, 748 F.2d 852 (4th Cir. 1984))).  He did not do so.  The refusal to review a claim for failure to comply with Virginia Supreme Court Rule 5:17(c) constitutes and adequate an independent state procedural bar. *Yeatts*, 166 F.3d at 264–65.  Thus, Virginia Supreme Court Rule 5:17(c) bars review of Patton's claim raised in his State Habeas Proceedings and which he attempted to appeal to the Supreme Court of Virginia.

Furthermore, Patton has not satisfied that aspect of the exhaustion requirement which demands that he fairly present Claims 1, 2(A)–(Q), 3, 4, or 6 to the Supreme Court of Virginia. If Patton were now to attempt to present Claims 1, 2(A)–(Q), 3, 4, or 6 to the Supreme Court of Virginia, that court would find the claims barred by section 8.01-654(B)(2) of the Virginia

---

[9]  Patton did not raise these claims on his direct appeal to the Supreme Court of Virginia.

Code.[10]   Section 8.01-654(B)(2) is an independent and adequate state procedural rule. *See*

*George v. Angelone*, 100 F.3d 353, 363–64 (4th Cir. 1996).[11]   Accordingly, Claims 1, 2(A)–(Q),

3, 4, and 6 are procedurally defaulted and barred from review here, absent a showing of cause

and prejudice or actual innocence.

### B.    Cause

"[C]ause" refers to "some objective factor external to the defense [that] impeded

counsel's [or petitioner's] efforts to comply with the State's procedural rule." *Strickler v.*

*Greene*, 527 U.S. 263, 283 n.24 (1999) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

First, Patton vaguely suggests that any default should be excused because such default is

attributable to the deficient performance of counsel. (*See, e.g.*, Pet'r's Mem. Supp. § 2254

Petition (Docket No. 2) 43.)  Patton, however, cannot rely on ineffective assistance of counsel to

excuse his default.  A claim of ineffective assistance of counsel as cause for the procedural

default of another claim "is *itself* an independent constitutional claim." *Edwards v. Carpenter*,

529 U.S. 446, 451 (2000).  Therefore, a claim of ineffective assistance of counsel as cause for a

second constitutional claim must be exhausted, or it may be procedurally defaulted itself. *Id.* at

453.  Patton has not properly presented any ineffective assistance of counsel claim to the

Supreme Court of Virginia.  Were Patton to attempt to do so now, the Supreme Court of Virginia

would find the claim barred by Section 8.01-654(B)(2) of the Virginia Code.  Thus, Patton's

---

[10] "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. 8.01-654(B)(2) (West 2011).

[11] Claims 3, 4, and 6 also would be barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), because these claims could have been, but were not, raised on direct appeal to the Supreme Court of Virginia. *Slayton* is an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997).

contention that the ineffective assistance of counsel constitutes cause sufficient to excuse his default is rejected.

Next, Patton contends that the inadequate law library and legal resources at his prison constitute cause excusing his failure to comply with Virginia Supreme Court Rule 5:17(c). In support of this argument, Patton submits his affidavit and that of several other inmates confined at the Cold Springs Correctional Unit #10 ("Cold Springs"). Patton swears that when he arrived at Cold Springs in 2008, "there was no institutional attorney and the law library consisted of four shelves (four foot high and five foot wide) of out-dated law books. There was no computer in which to research case law and there was no one who could assist me in filing a petition for a writ of habeas corpus." (Pet'r's Mot. Allow Affs. (Docket No. 8) Pet'r's Aff. 1.) Patton asserts,

> I did not have access to the institutional attorney or any law material to help explain what RULE 5:17(c) means. . . . There are no books here in the law library at Cold Springs Unit #10 which explain how to perfect an appeal. There is no procedural law material to assist me. The Law Library of The Central Rappahannock Regional Library notified me on August 16, 2010, that they could no longer provide copies of case law due to budget restraints.

(*Id.* at 2.) Although Patton claims not to have access to the books which explained Virginia Supreme Court Rule 5:17(c), the record indicates that Patton had access to the Virginia Supreme Court Rules. For example, on April 28, 2009, Patton wrote a letter to the Circuit Court seeking an extension of time to file his State Habeas Petition and "for permission to exceed the fifty (50) page maximum as is required by the rules of the Virginia Supreme Court." (*See* Pet'r's Br. Resp. Mot. Dismiss (Docket No. 15) Ex. E 1); *see* Va. Sup. Ct. R. 5:7(h) (West 2009) (limiting to fifty pages habeas petitions filed with the Supreme Court of Virginia).[12] Here, the text of Virginia Supreme Court Rule 5:17(c) informed the litigant his assignment of error must "address the

---

[12] Patton's state habeas submissions contain numerous references to Virginia statutes, cases, and Virginia Supreme Court Rules.

findings or rulings in the trial court or other tribunal from which an appeal is taken." Va. Sup. Ct. R. 5:17(c)(1)(iii) (West 2010).   In order to establish cause for failure to comply with a state's procedural rules, a "'[p]etitioner's alleged lack of knowledge must be due to a lack of reasonable access to the rules as distinguished from basic ignorance of the rules or the law.'" *Ervin v. Tansy*, No. 93-2055, 1994 WL 83249, at \*3 (10th Cir. Mar. 14, 1994) (*quoting Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992)); *see Williams v. Norris*, 80 F. App'x 535, 536 (8th Cir. 2003) (concluding inmate lack of access to a law library did not constitute cause to excuse untimely filing of state post-conviction petition where inmate had access to a habeas petition form that set forth the applicable time limit).   Patton fails to demonstrate that inadequate legal resources at his prison, rather than his own negligence, caused his default. *See Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991) (concluding procedural default is not excused where petitioner fails to show a causal relationship between his or her procedural default and inadequate legal resources in prison).   Patton has failed to establish cause to excuse his default.

### C.   Actual Innocence

Patton also suggests that his default should be excused because he is actually innocent. (Pet'r's Br. Resp. Mot. Dismiss 9.)   "Claims of actual innocence, whether presented as freestanding ones, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993), or merely as gateways to excuse a procedural default, *see Schlup v. Delo*, 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (parallel citations omitted). Here, the Court reviews Patton's claim under the more lenient standard for gateway claims because Patton's actual innocence claim would allow the Court to consider his otherwise procedurally defaulted constitutional claims.   A gateway claim requires "new reliable evidence—

17

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.*

If a petitioner meets the burden of producing new, truly reliable evidence of his innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (*quoting Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (*citing Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)).

Here, Patton simply has not provided any reliable new evidence of his innocence. Patton's new evidence of his innocence consists of Patton's assertion that:

> During a break at the September 8th, 2005 suppression hearing[,] Jerrick Dorsey[,] petitioner['s] cousin[,] admitted [to Patton] that he had wired $999.00 to their cousin Charles Morris, a U.S. fugitive hiding from federal authorities in the country of Trinidad and Tobago. Mr. Dorsey informed petitioner that Charles Morris had instructed to him to wire the money using petitioner['s] name, as the sender of the money transfer.

18

(Pet'r's Br. Resp. Mot. Dismiss Ex. B 2.)  Patton's hearsay statement about Jerrick Dorsey's admission is not "trustworthy" and does not constitute "new reliable evidence" of Patton's innocence. *Schlup*, 513 U.S. at 324.  To accept a habeas petitioner's commonplace declaration about the existence of evidence of his innocence would ignore the Supreme Court's admonition that the quality of evidence necessary to support a claim of actual innocence "is obviously unavailable in the vast majority of cases." *Id.*; *see Calderon v. Thompson,* 523 U.S. 538, 559 (1998) (emphasizing that new reliable evidence of innocence is a "rarity"); *McGivery v. Johnson,* 3:10CV455-HEH, 2011 WL 1838874, at *5 (E.D. Va. May 13, 2011) (rejecting testimony by habeas petitioner as a basis for an actual innocence claim.)

Because Patton has failed to adequately support his claim of actual innocence, the claim fails.  Hence, the Court need not proceed to the second step of the inquiry and determine whether, in light of all of the evidence, "'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe*, 593 F.3d at 377 (*quoting Schlup*, 513 U.S. at 327–28).  Nevertheless, Patton clearly has failed to meet that standard.  As reflected above, *see infra* Part I, the prosecution presented compelling circumstantial evidence of Patton's guilt.  Accordingly, Patton's claim of actual innocence is rejected.  Claims 1, 2(A)–(Q), 3, 4, and 6 will be dismissed.

## V. Fourth Amendment Claim

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnote omitted).  "The

19

rationale for the Court's ruling was that, in the context of a federal habeas corpus challenge to a

state court conviction, 'the contribution of the exclusionary rule, if any, to the effectuation of the

Fourth Amendment is minimal and the substantial societal costs of the application of the rule

persist with special force.'" *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985)

(*quoting Stone*, 428 U.S. at 494–95). Therefore, in a habeas proceeding, when a federal district

court is faced with Fourth Amendment claims, it should "first inquire as to whether or not the

petitioner was afforded an *opportunity* to raise his Fourth Amendment claims under the then

existing state practice." *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).

      Because Virginia provided Patton with an opportunity to raise his Fourth Amendment

claims at trial and on appeal, this Court need not inquire further "unless [Patton] alleges

something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment

claim or claims was in some way impaired." *Id.* The United States Court of Appeals for the

Fourth Circuit has admonished that "the burden of pleading and proof is upon [the petitioner] to

indicate in the petition . . . the *reasons* he has, and *the facts in support thereof*, as to why he

contends he did not receive an opportunity for a full and fair litigation of his Fourth Amendment

claims." *Id.* at 1266.[13] Patton fails to demonstrate that he did not receive a full and fair

opportunity to litigate his Fourth Amendment claims.[14] Claim 5 will be dismissed.

---

[13] In this regard, the Fourth Circuit has emphasized that "the ultimate rule of deference" contemplated by *Stone* "would of course be swallowed if impairment in this sense could be shown simply by showing error—whether of fact or law—in the state court proceeding." *Sneed v. Smith*, 670 F.2d 1348, 1355–56 (4th Cir. 1982). Thus, in *Sneed*, the Fourth Circuit rejected the petitioner's claim that allegedly false testimony by police officer and the application of incorrect constitutional standards constituted an impairment of his opportunity for full and fair litigation of his Fourth Amendment claim. *Id.* at 1356.

[14] Patton contends that he did not receive a full and fair opportunity to litigate his Fourth Amendment claim because the trial judge refused "to address anticipatory search warrant. The

## VI. Conclusion

Respondent's Motion to Dismiss and Supplemental Motion to Dismiss will be granted. The § 2254 Petition will be denied. The action will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Patton is entitled to further consideration in this matter.

An appropriate order will accompany this Memorandum Opinion.

Date: 3~6~12
Richmond, Virginia

_____/s/_____
James R. Spencer
United States District Judge

---

affidavit failed to state that contraband would be delivered which is required for an anticipatory search warrant to be valid. Trial judge purposely interrupts defense counsel and takes focus away from affidavit's failure to state contraband will be delivered." (§ 2254 Pet. 16.) Patton directs the Court to a portion of the transcript from his suppression hearing to support this argument. (*Id.* (*citing* Mem. Supp. § 2254 Pet. Ex. 19.) Review of the transcript of the suppression hearing reflects that Patton had a full and fair opportunity to pursue any Fourth Amendment claim he wished to raise. Counsel's decision not to emphasize the Fourth Amendment arguments Patton now wishes to press does not undermine that conclusion. Further, Patton had a full opportunity to raise any Fourth Amendment claim during his state appellate proceedings.